Good morning, Counsel. Good morning, Your Honor. My name is E. Ken Paxman, and I am here to represent Defendant Dana Bell in Chabad of California, whose President, Rabbi Bertolt Kuhnen, is also present in the audience. Chabad of California is a Jewish non-profit charitable foundation that informs people. It's been going for over 50 years as one of the religious centers, and on the foundation of charitable operations, such as rugby leagues, and my principal focus today will be on damages, because there are issues about damages that are raised in this case that need to be addressed by this Court. We vigorously deny that there is any liability, and believe that the credibility and intent issues in this case should be tried to a jury, but the damages issues are not the minimum source. The U.S. Department of Homeland Security issued grants for non-profit organizations that were at risk of terrorist attack to purchase security for their facilities. Chabad is a Jewish religious organization that was potentially subject to attack, applied for, and received some of those grants. Counsel, you don't dispute that those grants were subject to certain conditions? I do not dispute that. You don't dispute that your client failed to comply with those conditions? Your Honor, in part, they did not comply with the conditions, but the question is whether the failure to comply with the conditions caused the government damage, and if it didn't cause the government damage, how it is that an entity that received $350,000 paid back to the government, or spent for purposes of the grant, $440,000, winds up facing the judgment against it of $736,000, which is almost twice as much more than it received, even though it's paid back money to the government, and it used the bulk of the, excuse me, I shouldn't say it used the bulk of the funds, it used funds for the purposes that the grant was intended to serve, so they installed security, then had it disabled the vendor, ultimately paid the vendor. There were five facilities involved. Two of the facilities, no security was put in. They paid the government back, so the government has been paid back some of the money. Money has been used to purchase the security that the grants were intended to do, and yet they're now facing a $700,000 plus judgment when the government is not informed, and that's the issue. What you're really arguing, as I understand it, is that because you paid out some money on your settlement with the vendors, if you will, that you ought to be able to leverage that payout into an argument in this particular situation. Is that what the argument you're making? You're utterly right. I mean, I know that you tendered $136,920 to the government, and I know that you also paid out money as it relates to a settlement with some of those who you had contracts with as a result thereof. Yes, sir. That was how much? There was $232,000. Did you ever make the argument to the district court that your outlay of that $232,000 ought to be considered in determining the terrible damage of the settlement? No, Your Honor, we did not. So if you didn't make that argument there, how can I give it consideration here? There's two bases. First of all, Your Honor, we're here on incendiary judgment. We're not here after intriguing. On summary judgment, this court is plenary. However you pronounce that word. De novo review. This is Kozak v. Chabad. You were indicted for false claims act, right? No, Your Honor, it's a civil action. It's not a criminal action. I understand. I'm sorry. You were brought to trial or brought before the court for violation of false claims, right? Yes, sir. And in the middle of that, you paid back the government $136,920. You didn't say anything to the district court about the $260,000. So how do I get the chance to talk about that here? Your Honor, it is under 37 U.S., I'm sorry, 31 U.S., 3729, the government's burden. I'm sure that it has advantages. They went before the district court. You had a chance to argue all the things you could before the district court. You didn't make this argument. So in effect, you waived it. Your Honor, thanks to the circuit authority, it allows this court discretion to take on an argument. When? It is a purely legal argument. Why is this legal? Because whether or not the government was damaged under a particular set of facts is a legal question. Damage is a legal question of whether harm has been done. If the damage is, if the damage doesn't appear in the record. But it seems to me that at that point, if you can argue this $260,000 is not a damage to the government, the government's going to come in and say why it was damaged, even though you paid the settlement. I mean, this is a factual question, these damages to the government. They're not automatic, simply because you pay out in settlement, not damages. The government should have a chance, and that's why this isn't a good legal argument, to suggest that your settlement figures aren't necessarily less damage to them or more damage to them. And that would be something the district court ought to take up. And you didn't let them. So the legal theory is out. What else are you going to tell me, Your Honor? Excuse me. Your Honor, if I may, you've addressed that question a little bit. Well, there's no question that I'm not. I'm not buying that. So is there another theory? Yes, Your Honor. There's an issue involved about whether or not in this situation, issues related to whether there's damage, whether or not this is an unconstitutional excessive fine under the 8th Amendment. So we're now down under excessive fine. Did you argue that before? No, Your Honor, we did not. And again, Your Honor. And you say that's a legal argument, then? Yes, Your Honor. Okay. 8th Amendment claims are generally faxable claims. Your Honor, they generally are not faxable. I mean, the bottom line is, if I look at this case law, if I look at an 8th Amendment claim, it's a faxable claim. It is not something that I can determine on a legal basis. But, Your Honor, if fax aren't restricted, can you record developed by the government in the legal language? I understand they have to have an 8th Amendment. If you can argue that they've had a chance to develop the record more. No, Your Honor, they wouldn't because of summary judgment. The record begins and ends with what's the principle statement, right? Summary judgment. They're not allowed to come in on replying and adding new evidence. So, whatever the record is, it's the basis for their decision. I'm sorry for that, district court's decision, excuse me. So, that record is not developed by the government sufficiently to allow a finding to remain. It doesn't support against reviewing things on a general basis. The record is the record. And because faxers, it becomes a matter of law, essentially. Whether or not the record damages becomes a matter of law, whether or not the 8th Amendment claim comes forward. Well, how could the government respond to an argument that was never made by the plaintiff or by the defendant? How could, if you ever made these arguments at the district court level, how would the government respond to them? Excuse me, Your Honor. The government has the ability to change the motion. The motion proceeds on giving some facts. If we make the argument in the district court or not, in the reply, they can't add any additional facts. So, the place where they could make the argument is here. If in your response brief, you would make some of these arguments. I'm sorry? If in your response brief to the government's motion for summary judgment, that you would argue that the record is valid. And it's arguing here that the record is not developed to support their argument. Yes, Your Honor. Ideally, that's what would have been done. It wasn't done, but I believe it's a legal issue that this court could take up and it should take up. Because it's simply the unfairness of the situation where the government pays money so the non-profit institutions install security systems. The non-profit institution actually does install the security system. For two of the facilities, it doesn't install the security systems. It gives that money back. It's now paid out more than $87,000, more than it receives. And yet, it's facing a judgment in excess of $700,000. Again, it's not something that this court has the discretion to take up. And I believe under those circumstances, it should exercise that discretion. My worry is this. I wanted to really trick the record. It seems to me that you suggest, even on page 58, or 43 of your brief, that the Eighth Amendment inquiry is largely factual. That we have to engage in a fact-specific, case-specific inquiry. Then, if I read United States v. McLaughlin, it says, The determination of the penalty is grossly proportional to the gravity of the offense. And then in Wright v. Reitland, I see that it requires a fact-intensive inquiry. So again, it seems to me that the Eighth Amendment argument is fact-driven, not legal. And therefore, I can't wait. Now, I'm just putting it out there for you. I understand your position, Your Honor. And I respectfully disagree. As far as when damages should be traveled. Whether they should be, well, when credits against, or when payments made to the parole should be traveled. Whether it should be traveled before or after counting, leaving the amount in the judgment. I'd like to refer the court to our brief, and I'll research the rest of the briefing further on. Thank you. And I would like you, before you sit down, because I know you say, I'll put it in my brief. Orstein is red and on point. Orstein says, actual damages are to be multiplied before any subtraction is made for compensatory payments. The statute speaks of doubling damages, not of doubling damages or uncompensated damages. So, distinguish Orstein for me. Your Honor, I am not as capable of distinguishing as the court in the sentence you did in Anchor Mortgage. They went through an extensive analysis of how Orstein does not require tribunals in situations where the payment that's made back to the government is from the primary source that received the funds. In this case, that's an attack. That's your best argument, and that's in the brief, I am offended. And then, also, the Ninth Circuit authority following Ornstein, the issue was never considered because it had been conceded by the appellant. So, that's a situation where the appellant erased the argument we're making now. Thank you, counsel. Thank you. May it please the court, Kelly Taylor for the United States. As the court appropriately noted, the defendant has waived all of the damages arguments that it tries to make here before you today. I'm happy to address them if the court has any specific questions. But, otherwise, the district court appropriately awarded damages, and the district court's finding is entirely consistent with Ornstein, as well as this court's opinion against Zafi and Eberbohm. There is also no serious dispute that Eberbohm obtained hundreds of thousands of dollars in federal grant monies, based on valuable false statements. Rabbi Kuhn had openly admitted that Eberbohm had no safeguards in place to make sure the money was used as intended. In fact, we know from his deposition testimony that the money was put, that grant advances was put into overdrawn accounts and otherwise used for ordinary business expenses. The government has an obligation to protect the public risk, and by putting conditions on monies when we grant them to people is entirely consistent with that obligation. There are no travel issues in effect in this case. The defendant has not been able to identify any travel issues in effect in this case. The damage issues were conceded in the district court. In summary, judgment was entirely proper. Does this answer the panelist's questions? Do you have anything else to add? All I'm going to say is that it seems a little more worrisome to me that they did pay up more than they're getting credit for. And I know that that isn't in front of the district court, and I know the district court didn't have to think about it. But has the government, in thinking about really how this case could be done, thought about mediation? Your Honor, we mediated this case multiple times, and I think it's really telling that Rabbi Thunen in his deposition said that indeed the money was put into the government, but he had no intention of ever paying it back. I understand. The money is guilty. The bottom line is, it seems to me that the money things he said about it make it a pretty easy case. But it is nonetheless some worrisome, if you will, that they didn't pay out more funds to others to do what they said they were going to do. Maybe they had forced into it by settlement. Maybe they're just being charitable. I don't know. But it seems to me those are not things that we don't go unnoticed. Maybe a court can't do anything about it. But if they paid them out and they really didn't keep them, isn't that something that the government thinks about at all? So I think it's important for this court to understand that the money that the government gave for these grants was to do certain safeguards at the properties. And what happened to the money that the government gave was it was diverted from other purposes. And the court's position is, well, we could just find other money later and pay that later. And so what happened was they didn't pay it later. And the lenders had to sue. And the United States had to sue. And even after we sued, after going through pre-suit discussions and post-suit discussions, they still didn't pay the money back. In fact, it wasn't until summary judgment was eaten today that they made that $136,290 payment. So this wasn't a situation where they came forward. And in fact, the Close Claims Act has a provision that if you come forward, you're only subject to double damages sometimes instead of triple damages. But those weren't the facts of this case. The facts of this case were clearly egregious that the government was entitled to the money back. It's also important to know that in the context of calculating damages, there's a difference between the situation where the government is purchasing a good and getting something tangible for the government and a situation like we have here where you have a grant where the government is not getting any tangible benefit. And under that situation, the benefit of the bargain rule doesn't apply because we're not getting any benefit. So the fact that the fences were ultimately built on the object of money, it prevented someone else from getting the money under this competitively awarded system. So it is an important issue for the United States. So your argument basically is it's important to protect the integrity of the program to make sure that the funds are used in the intended manner. Correct. And that's consistent with what this court found in the McAbee case. I mean, in McAbee, you had Medicare benefits, and the patients received physical therapy, but the person who was billing for it wasn't entitled to bill for it. And in those situations, the government's not buying physical therapy for the government. The government is providing a subsidy. And I think it's just, for the record, important to note that the defendant talked about the acre mortgage case, the Seventh Circuit's decision in acre mortgage. But the Seventh Circuit Judge Easterbrook, in the Rogan case, agrees with the analysis that when you're providing a subsidy, and you're providing a benefit, an intangible as opposed to getting a good, that the proper award of damages is the full amount of the grant. Thank you, counsel. Well, I agree. And the idea is that it's a penalty because you didn't use the grant money as it was supposed to be used for the restrictions and rules attached to that grant money, as opposed to the damages of having to pay it back. Yes, you have to pay it back, but then there's some aspect of this. The travel damages are a penalty to try to discredit others, obviously, from doing this, and to recognize that they violated the terms and conditions of that money to begin with, right? Yeah, that's correct. And I think that being Supreme Court, in the Ornstein case, appropriately noted. But to hold it otherwise, to allow someone to come in once summary judgment is filed, or on the eve of trial, or on the eve of judgment, and pay back the single damages in order to avoid the travel damages provision of the Lost Things Act, we'd render that provision meaningless. All right. Thank you. Thank you. Good morning. There's a couple of issues that need to be addressed in the presentation that everyone made. Number one implies that Scott didn't do anything into the laws he was pending. That's absolutely not true. As far as the government's suit against Fabat, while filed in 2010, it had not been served on Fabat because the government did not claim the lawsuit until 2012, when Fabat made its payments to its vendor. It made those payments well before it was aware of the lawsuit that had been filed under seal, so that the implication that Fabat only did something after the lawsuit was pending is incorrect. Also, the issue of whether or not Fabat can use his own funds for purposes of the program is an issue that was squarely addressed in the Ninth Circuit case of Woodbury. In Woodbury, the defendant had used government funds other than for the government's purposes, and then used his own funds for the government's purposes. In Woodbury, the Ninth Circuit found there was no damages. That's the situation here with Fabat took the money from the government. There's no question about that. Did not use the money in the manner in which the government desired, but then subsequently used its own money in the manner the government desired, and so Woodbury is controlled in precedent. Finally, I urge the court to read the sections of the brief relating to knowledge, seal and term, and intents, because Fabat did not have an intent of going to the lawsuit. Thank you. Thank you, counsel. Thank you both, counsel. In case this argument is submitted for a decision by the court, then please have a calendar for the morning. We are in recess until 9 a.m. tomorrow morning. Thank you.
judges: Rawlinson, N.R. Smith, Watters